Good morning, Your Honors. Todd Tracy appearing on behalf of Tom and Patricia, excuse me, Tom and Patricia Price and HEN-OM. I would like to try to reserve two minutes for you. I'm sorry. Okay, go ahead. Thank you. Today we are looking at another one of these arcane provisions in Chapter 11 and trying how to fit those provisions into a case that involves individuals as opposed to corporations, the specific sections that we're looking at. And is it the case that this happened at all because, um, you missed the deadline on 523? Is that right, essentially? So, well, you know, that is certainly. I mean, it's only relevant to the fact of there's no reason to start, you know, worrying too much about this statute if the whole thing would have been fixable had you done it right. Well, had SR1, they did in fact file an action under 523, but it was untimely and was dismissed by the court. So you can't, that remedy is lost. That remedy is lost and that has been decided by the bankruptcy court dismissing that as untimely. And you haven't challenged that ruling on appeal? No, no. Nobody pursued that after it was dismissed. Subsequently then, the Chapter 11 trustee filed their plan of reorganization and SR1 brought the complaint to deny the discharge under this 1141D3 statute. So, I know you make two arguments. I mean, before you, before I get to that, your clients are exactly situated the same, are they not? You're not making a separate argument? No, we are not. Okay. We are not. You make two arguments. The statute has three prerequisites. We all agree that there's fraudulently incurred obligation. You argue that there's not a liquidation and you argue that because your clients have jobs, in effect, they don't meet the statutory requirement. Those are the two points you're making. But those are the two arguments, yes. Correct. Okay. Focus on the next one. It strikes me it would be a strange statutory scheme. And I understand this usually applies to corporations and that's why we're worried about it. Would it be a strange statutory scheme that said you don't get a discharge if you're unemployed? I think the way... I mean, what purpose would be served by saying you get a discharge if you have a job but you don't get a discharge if you're unemployed? So, I think it's even odder, excuse me, more odd, I hate to use my correct grammar, in that the very restrictive reading that SR1, the bankruptcy court and the district court applied was this Grouts case out of the Fourth Circuit that just you know, earning wages is insufficient. I mean, just being merely being an employee is not sufficient. The Fourth Circuit's view, although it's a very brief disposition, seems to be that what this means is what the legislative history suggests it means, which is it was really aimed at corporations, but if you continue conducting the same business, if you're the doctor who reopens your office there afterwards, then you qualify, but it has to be the same business. And if you're in a different business thereafter, you don't qualify. And that does seem odd, but it talks about basic employment is the language that Grouts uses. So, the part I struggle with, and I think the odd reading that you could reach if you take that couple in Duncan, who ran their company called Duncor, and they were fine, they were entitled to get a discharge, but if you have a software engineer at Amazon who is simply working for a salary and for wages would not be entitled to a discharge. Well, I mean, the whole, it would be helpful in general to try and figure out what this whole is about. And I gather what it's mostly about is precluding and runs around Chapter 7? That was correct. That was the original idea. That was about 727A1. So, essentially, if you're reorganized in some sense in which Chapter 11 recognizes reorganization, then you can get the discharge. But if you're using Chapter 11 to get essentially what you would get in Chapter 7, i.e. just disappear, then you are subject to the discharge defenses of Chapter 7. Is that basically what's going on here? Well, so, along those lines, what was really being, what concerned Congress in these two provisions was this trafficking and corporate shell site. Well, but that, as far as I can tell, was actually taken care of by the exception in 727 from corporations. So, that's not what this is about. Correct. But this is the, I believe this is the Chapter 11. Your clients effectively filed to Chapter 7. I mean, I'm not saying, I'm not arguing technically that it was. I'm just saying effectively what happened was their individual debtors and all their assets were going to be liquidated to pay off creditors, correct? So, the Chapter 11 trustee's plan said that, and this ties in also to the liquidation idea, the Chapter 11 plan filed by the Chapter 11 trustee said that, and there was a definition in that plan that said estate assets, which is different from the requirement under the code. No, I understand that, but I was leading up to a question Judge Berzon, I think. Her questions lead me to this question. If your clients had filed to Chapter 7, would they be entitled to a discharge? My guess was probably no. And so, if you think that this statute was meant, in effect, to stop an end run around Chapter 7 for individual debtors. As well as corporations. As well as corporations. As well as corporations. Because it does not differentiate. Yeah, as well as corporations, but we're dealing with individual debtors here. Doesn't that argue that the discharge ought to be denied here also? Except that I don't believe that there was, in fact, liquidation under Chapter 7 in this case. That's right. I've asked you to assume that. So, go back to that issue. I'm assuming that there was liquidation, although I would next point out that in 2005... Before you go on, so then if there was liquidation, you think a discharge should have been denied? No, I don't, in this particular case. Because the rules in Chapter 11 for individuals have now changed. And now you have this requirement of debtors to submit five years of their disposable monthly income to a Chapter 11 plan. And so, now you have this anomalous situation where the debtor is required because of new Section 1123AA, which was introduced in 2005, to commit this five years of disposable monthly income to a Chapter 11 plan in order to gain confirmation. And so, they're not doing this liquidation. And in fact, that's what Huff starts talking about. Well, you don't mean they're not doing the liquidation. That goes more to the business part, right? Pardon? What does it have to do with liquidation? So, what Huff says, and that's a bankruptcy appellate panel decision, and I will admit it kind of merges the idea of the liquidation and this disposable monthly income requirement. But it says, really, you're not liquidating. I mean, you may be liquidating some assets, but you still are required to work and move forward. Under that argument, this statute has now become illusory. Because under every Chapter 11 plan, there will not be a liquidation if the continuing, if the obligation to put in income is, makes it not a liquidation. So, there's a couple different ways that creditors can come about this. And there's also the additional requirement that what we're talking about in this statute is a denial of the discharge. Well, that's why I started where I started. Could they have just done all this through 523 and we wouldn't be here? They certainly could have, but it did not happen appropriately. So, in terms of whether there's a hole that needs to be filled, was there a, I mean, I'll ask them this, but if this was just bad lawyering, then it's something we shouldn't be worrying about, if there's a hole left. There certainly were ways to deal with it. There's other ways that creditors can deal with these situations in looking at individual Chapter 11 plans. As we all know, a debtor is required to get the requisite votes in order to confirm a plan. So, creditors can just vote no. I mean, in terms of how, is it 1123? What's the section you're talking about with the, about the 5-year? 1123-88. 1123. That was enacted after this section? Yes. So, this section's still here and we still have to deal with it for whatever it means. Yeah, that's why I was asking, your interpretation would make it illusory now because there would never be a liquidation under 1123, right? So, the next step, though, in the process is all 1141-D3 does is would, sets the standards by which a discharge can be denied. 1141 gives us that you are, 1141-D1 says that we can, you're entitled to a discharge, but individual debtors then have to take the next steps, which are 1141-D5. Right, but I'm focusing on your, I'm focusing on your liquidation argument. And this, the plan says it's a plan of liquidation. It's got that language in it. And as a practical matter, although it doesn't liquidate everything on day one, that would be a silly thing because then you'd have a fire sale. So, it calls for a staged or thoughtful plan of liquidation. But you're saying it, even if that's so, it's not a liquidation because of this requirement of, in 1143, of putting five years in? I think that's what Huff is talking about, that bankruptcy appellate. But therefore, that would mean there was never a liquidation in a Chapter 11, right? Arguably, that is the case, under the way these new provisions have been done. I mean, it would have been a very simple fix when we, when 1120, 1141-D5 was enacted. I thought your main argument about why there wasn't a liquidation is because the shares in the highest up-level LLCs were not, remain with the debtors. Is that, first of all, where is that? That's part of the plan? That is part of the plan. Or is it just ignored? I thought it was sort of ignored because nobody really cared because they weren't going to have anything in them. Well, there were things in them because actually you will see in like ER, I think 44 through 47, the trustee talked about things that he had in fact liquidated. Well, but the trustee said, and it's in the record, these are essentially worthless. He does say that they're essentially worthless, but some aspects of them were. Yeah, they may have some technical ownership of stuff, but they're worthless. So I don't care if they keep them because I don't want the bother of liquidating them. But the trustee did in fact liquidate, for example. So I'd like to look at this liquidation idea as sort of a beautiful four-tiered cake. Up at the top is the trustee and the bankruptcy estate, and our next layer is property of the estate because 1141 D3A speaks specifically of property of the estate. That is those LLC interests of these parent companies. You have the next layer down in our cake is all these 70-some subsidiary LLCs, and then the bottom layer of our cake is all of the assets that are owned by those subsidiaries, which are in turn owned by this property of the estate, which the trustee controls. Now, what the trustee is doing is selling our bottom layer and then using the corporate structure and sort of upstreaming the funds from selling an asset, selling Mr. Price's house, which was in turn owned by an entity called Queen High Full House, which was in turn owned by the trustee. So what he did is he sold down here. He sold the real stuff. He sold the real stuff. He sold the real stuff and didn't bother selling the corporate structure. He didn't sell the corporate structure because he couldn't. There would be no way. If you took out this layer of the cake, you could not get it up to the trustee and the bankruptcy estate. But doesn't that suggest that exactly the same interests that pertain in a corporate case pertain here? Because if you start with the notion, as you did, which I'm not sure it's entirely accurate, that avoiding a sale or resuscitation of the corporation after liquidation was the reason for this business requirement, that you would have the same issue here. That is, if you still have this LLC shell, presumably, if the business, I mean, why then don't you look at the shell and say, is the shell staying in business? No, it isn't. Or staying in the same business, because otherwise you could start generating something out of the shell. You could sell the shell. But the plan itself said that the trustee could liquidate or otherwise reduce the assets to cash. And that's what the trustee was doing. And that's when we look at some of these other cases, you look at Enron and you look at— But I mean, now you're arguing against yourself, because I thought your whole argument was that it was the fact that the highest level was not being liquidated in some sense that made it not a liquidation plan. No, I believe that because the property of the estate, which is what the statute requires to be liquidated, was not being liquidated. So the debtor only has— But isn't that exactly what you're saying? Because the formal property of the estate was, you call it a corporate structure, that's fair enough. They're LLCs, as I recall. Correct. But— So those have not been— Essentially partnerships, but what you're saying is that there wasn't a liquidation because nobody sold off their shares in the LLC. Correct. And that is property of the estate, which is what 1141 D3A requires. Basically, and maybe I'm missing a step here, what happens in a corporate reorganization and the reason why the statute is set up the way it is, which is not to get distracted by the continuing existence of the corporate structure? I think a couple of these different cases have looked at this— Is that not correct? I'm sorry, let me— I mean, aren't you setting up an argument in which you're increasing the parallelism to the corporate reorganization rather than decreasing it? You're saying essentially this is like when the corporate structure remains in existence. And that's why the statute is set up the way— But you're also saying the purpose of the statute is not to let anybody profit off the existence of the corporate structure and therefore to look at whether the business of the corporate structure continues. I would direct and look at the Enron and the Revstone cases. I'm sorry? The Enron and the Revstone cases that you cited. Those were very complex corporate structures, a lot like this. And what the courts were saying, those plans like ours, or like the trustees in this case, did not revest anything in the debtor. It called for a liquidation of all of these subsidiary entities. Those were corporate— Those were corporate cases. I'm interested in one very narrow point. Um, what's your best case on this exact proposition? Not reasoning from Huff or— I believe, you know, there's so little case on applying these individuals— Well, there's a court circuit case contrary and there's some bankruptcy court decisions contrary. Do you have something in your favor? I believe the Duncan case really fits us well. Which case? I'm sorry? Duncan. It's a bankruptcy case out of Arizona. Yeah. 2012, which we've cited in— Right, and it's dictum, more or less, in that case, isn't it? So, no, it's—I don't believe it was. Okay, I'll take a closer look at it. All right. Your time is up. I'll give you a minute to rebuttal. Thank you very much. Thank you, Your Honor. Good morning. May it please the court, I am Charles Eckberg with the firm of Lane Powell. We represent Spokane Rock One, the appellee. Also with me is my colleague, Ms. Rachel Greenlee. I want to go back to a question, I think, that was asked of Mr. Tracy right at the beginning, and that is the reason that the 720—the reason that the objection to discharge was filed was because somehow the court dismissed an action to determine the dischargeability of the debt under Section 523. These are two entirely different sections. The grounds for objecting— But it's the same thing, no? Not necessarily, no. The 523 contains objections to the dischargeability for things like fraud in giving a false financial statement, drunk driving, you know, things that relate particularly to a creditor. Section 727, which contains the objections to discharge, are things that deal with—well, one of them is committing a fraudulent transfer within— I want to understand your argument. Are you saying a 523 petition couldn't have covered the acts for which the first prong— That's right. Yeah, they're not the same. They're not the same thing. You can't say that they—they're mutually exclusive in some cases, most cases. Some cases. Most cases. In this case? Yes. In this case, they're mutually exclusive? Yes, because we're talking about debtors who is alleged destroyed records, filed false oaths in their bankruptcy schedules, violated court orders to preserve records, things that have to do with how you relate to the bankruptcy system. Right. But I just want to understand, your argument is that 523, an application under 523 wouldn't cover, necessarily cover, all the things that 727— Exactly. So that— They're mutually exclusive. Well, not mutually exclusive, but different. Yes. So there may be some overlap. In this case, is your argument that the reason that—reasons that 727A is satisfied are not the reasons that would have been the basis of a 523 petition? Exactly. Exactly. So here's my problem with the statutory structure, and we all recognize it was mostly designed for corporations. If there is a liquidation of a business, how could it ever be continued? Well, that's a very good point. Thank you. But—and I think the system is set up to say, even the dishonest Chapter 11 debtor who would be denied a discharge under Section 2727 can still receive a discharge under Section 1141d3 if it's a plan that tries to rehabilitate the debtor— No, I understand that. I'm just trying to figure out the statutory structure here as it applies to individuals. So we have three requirements. The fraud requirement is stipulated here. Assume we have a liquidation. Right. And the Fourth Circuit says, well, what the third requirement is that you continue essentially in the same business. If there was a liquidation of the business, how can you continue in it? Well, you might be able—and I think there were cases, Suarez, I think, was one, where you could basically liquidate a lot of assets but then continue to repay your creditors out of continuing in your profession, albeit maybe not exactly— That's a doctor who— That's a doctor, right. Who, in effect, his office, you know, he files a chapter, he gets to the end of the You've continued in the same business. Same profession. And you're going to— And you're earning money to give people. So why do we care whether—now you're getting to my next question. Why do we care if that's the goal, that you're earning money to pay off the creditors, why do we care whether it's the same profession since 1143 now requires you to put that money into the plan? I think you're—okay, I think maybe— Right, so— You're talking about a different section. Right, right. So for earnings, right, we now have a situation where your earnings over the next—some portion of your earnings over the next five years have to go into the— It's not the same thing, because even the definition of disposable earnings under section,  I don't want to say exception or exclusion, basically you get to deduct the living expenses and normal expenses, as well as expenses for continuing in any business. So these individuals aren't anywhere near meeting— No, there was no evidence in the record to suggest that they ever made any payments or would make any payments. So let me tell you what my biggest problem with this argument is, with the argument about the continuation in business. Your position is that any business isn't good enough, it has to be. Well, not any employment is good enough, you know, taken to the logical extreme to which the appellants would have us believe. Well— They could get a job— So it would have been—but if, for example, instead of going out and getting a job, they had gone out and set up a local grocery store, that would have been okay? As long as they wanted to continue paying their creditors, who were their pre-petition creditors, out of the operation of that business. Now I'm not clear what your position is. The Fourth Circuit says it must be essentially the same business. So Suarez is agreeing— Continuation. But your answer to Judge Berzon said if they opened a grocery store, you think they would qualify? Well, as long as they're making the effort to continue to pay creditors out of the operation— Well, what difference could it make whether they're—I mean, so if they were making the effort to pay the creditors out of their salaries, that would be—then they'd be in business? I don't know about their salaries as much as it would be the income from that operation. So— So— In other words, they're making an effort to re— Yeah, I don't see where you get that out of the statute. I mean, either business is the same business or it's any business. I think— And if it's any business, then you may have a problem, don't you? Yes, I admit. But I think that the whole purpose of it was I owe money— The language is does not engage in business. Right. And that's— Doesn't say the same business. No. It does say business. Now maybe you're saying being an employee is not engaging in business. That's right. But engaging in business, if you set up a grocery store that is engaging in business and therefore that's the cutoff? I think business is ambiguous. I think it does mean there's a nexus between what you've owed your pre-petition creditors from and you're going to actually try to reorganize like— Well, but that's different. You might have a plan of reorganization that says we're going to open another business and we're going to use that to pay our credit. That's not this case. No. So— If I were a bank teller, would I be engaged in banking? No. If I'm an auto mechanic, am I engaged in the auto mechanic business? Yes. Even if I don't own the— Oh, I'm sorry. No, I'm thinking of some of the— But that's a completely different argument than the one accepted in the Fourth Circuit because it doesn't depend on it being the same or different. In other words, if this guy owned an auto mechanic store and he otherwise— and he went into bankruptcy in Chapter 11. I mean, he personally owned it and it was a liquidation plan and then he went to work for the same auto mechanic business. I understand it. The Fourth Circuit would say that he wasn't engaged in business but you might say he was, but you would say he wasn't. In other words, is it the nexus to, is it the matter what this business is doing or what your position in it is? I mean, all the cases— I don't know that I would draw that distinction. All the cases you cite draw that distinction. All the cases you cite say this was meant to apply to somebody who went into the same business. Right. Or doing the same type of thing. And I think Duncan was even correctly decided. Well, Duncan, in the end, the corporate shell kept going. Duncor kept going. That was a separate case, but the debtors continued to operate— Continued to operate that corporation. So in this case, the corporate structure remains or the LLC structure remains in the sense that the trustee hasn't, didn't find, having denuded all the assets from the corporation, he didn't see any reason to then sell the shares of the corporation. That's a sort of— Worthless. Worthless, right. So what if these guys used the existing corporation to open the same, to do the same sort of things they were doing in the past, the non-fraudulent things they were doing in the past, real estate, et cetera? And the assets revested in them? No, don't—no, forget about the assets. There's nothing here about the assets in this section. I just want to know whether that would be the same business. Probably, yes. Okay. So, so maybe, maybe it's just there to make sure that people don't go back to the same old shop, or if people do go back to the same old shop, then, then they're going to be able to— If this time they used the LCC instead of dealing in real estate to open up a car mechanic shop, I don't know if you'd do that, but— I don't think that would—no, that doesn't sound like—that's just like going out and getting the job at, you know, McDonald's. Well, so, so tell me why we should read same. Now, I understand how that structure works. Why should we put the word same, or similar, or pre-existing into the statute? There's something in the legislative history that suggests that's what Congress intended. Yeah. We're told from time to time by the Supreme Court, you know, legislative history may be unreliable. So other than the legislative history, what is there that tells us that we ought to, we Because you want to—you're dealing with the same creditors. The idea of a reorganization process in this context is, I've dealt with all these people, I left them owing a whole bunch of money, but now I'm going to continue in the same business, which deals— You see, but I don't understand— Which continue in the business— But I don't—see, that's why I don't understand the function of this section, because we already have a, i.e., it has to be liquidated, right? So if it's liquidated, and the creditors are only getting paid out of the monetized money, then what difference does it matter if they engage in business? I mean, how are they going to pay anybody? Well, because maybe they're going to pick up the ashes and continue on because they are going to repay their creditors going forward out of their future earnings, because theoretically, they'll be dealing with the same group of people— But by not discharging the debt, you're basically saying you still have to pay these things because you're still in business. Right, you're going to—you shouldn't be able to take advantage of a— So if you restart the business that you just liquidated, that we just—that you just—that was the subject of the chapter, even though you're an individual debtor, in that case, we're going to require you to keep paying your debtors. Right, yes. But we're not going to require you to keep paying the debtors if you get employed by a similar business. That's right, because you're not dealing with the same people again. But the reference to pre-petition, if we were to read that into the statute, that's sort of an arbitrary qualifier, isn't it? If the idea is that if you get up back on your feet and get into business and start earning money, you have the wherewithal to pay off these creditors. So why do we give you a discharge? So why is it limited just pre-petition—the pre-petition business? On the one hand, it's pre-petition. On the other hand, your other example is McDonald's. Isn't there a lot of room in between where somebody could engage in business without a qualifier and have the wherewithal to pay the creditors and therefore not be entitled to the discharge? Yes, I think that's— In other words, wouldn't it make more sense, unlike what the cases have done, and more faithful to the language, which would get you where you would go in this case, but in others it wouldn't, to read engage in business as precluding an employment relationship. So engage in business means conduct a business as some sort of a manager or owner of a business. Now, that makes sense, and that doesn't require adding words to the statute, but adding pre-petition business or same business, which isn't necessary in this case anyway, as I understand it, because they're not engaged in business in the usual sense of the term, are they? No, they're not. The other problem is, how do you know any of this at the time of the plan? Because the plan would tell you. That's why the post-consummation— Why would the plan tell you? I mean, suppose tomorrow they went out and started a business. Well, yeah, but we would have to wait and see that. I know, so you can't tell it from the plan. So what does that do with the discharge? Well, the disclosure statements normally would contain what's going to happen to the debtors. What are the debtors going to do? How is the plan going to be implemented? What if tomorrow they did exactly what Judge Berzon said? They went out and— Let's assume it's the same business, just so we're out of the fight about whether it's the same or any business. What if tomorrow they went out and—I forget what the name of the LLC is—reopened it and went into the real estate business again? Would they then—would the situation change? Would they then be entitled to a discharge but have to pay money from the business to creditors? That's sort of a strange way to run the railroad, isn't it? I know, but I think that's the balance that the statute tries to give. It can't be, because according to them at least, or according to you, they would not be discharged. Right. But then let's assume they qualified later. They met all the qualifications of this statute a year from now. Then they get discharged? Would they get a discharge? Then that would mean the court would have to delay confirmation of the plan for a year. So it has to be at the moment of filing. Or when the plan is presented for confirmation. Does the plan say in this instance or does it usually say what these guys are going to do afterwards? Some, in most cases, they do. Does this instance say what they're going to do afterwards? No. No. Disclosure statements. Why is the disclosure statement saying they were going to do? Mr. Umm had been terminated, and Mr. Price might be continuing as a temporary employee for a limited period of time. But it doesn't say whether Mr. Umm is going to go out and take his LLC and start selling real estate again. No, it does not. Doesn't preclude him from doing it. No, it wouldn't. Very odd. The whole thing is extremely odd. Your time is up. I'm sorry. It's built for corporations. We understand. Unfortunately, the words keep meaning, you know, the words are there. I'll be very brief. I've reread Duncan and taken a look, and Duncan is one where they continue the very business, Dunkor, that was there before, correct? They did continue Dunkor. But again, when we're talking about individuals, and I heard your Honor's comments. Because Judge Marler is almost always right. But I'm not sure his being right covers this situation. Well, I'm familiar with one case where he thought perhaps he wasn't. But anyway, there is a, how is this different? I mean, we're talking about this debtor being a manager of this company. And therefore, that makes them engaged in business. But they're still earning their income through being an employee of that company. That's no different than the person who's out. But that is not the ordinary meaning or any meaning, I don't think, of the term engaged in business, is it? It will, no. And I think. Where do we get it from? Well, that's a good question. We've had a number of different views on what engaged in business is. What the Flintcoat case said, and if I can. It said basically some sort of ongoing operation used to fund your plan. And in Flintcoat, that's a really interesting case. Because that talks about this whole pre-petition business. And remember, Flintcoat was a manufacturer of asbestos products. And the comment of why would we want this company to continue to make deadly products to fit within this pre-petition business concept? Don't we want this company to change that format? In fact, that's what it did. It became mostly a real estate holding company, which was simply not what it was doing before. That's why saying may or may not be right. But in that case, the company continued. It was a corporate case. It was a corporate case. The company continued to engage in business. And what I think, what I understood Judge Berzon's question to be, but it's certainly what I'm interested in is, are you engaging in business simply because you're an employee of a company? Isn't our goal in Chapter 11 to maximize. No, I want to know whether anybody in ordinary English would say that somebody working at McDonald's is engaged in business. I don't believe they would. I don't believe they would. But on the other hand, what we're trying to do in Chapter 11 is to maximize our recovery for creditors. Thus, this new five-year program that you're entitled to do. And don't we want to encourage and incentivize people to try to make that change? If I can, if I am a McDonald's worker and suddenly I become, through the magic of the world, become entitled to be a software engineer, why shouldn't I be able to change my job? Why shouldn't I be able to do that and do something which is going to increase my distribution to creditors? Let's incentivize that as opposed to punish people for making them stay in the same job as opposed to switching around and being able to do something better with their time. You're running out of time. I am out of time. You are in fact out of time. I am out of time. So thank you very much and thank you both for your argument in this puzzling case. Versus Spokane Rock is submitted and we will go on to Martinez-Perez versus Sessions.
judges: Berzon, Hurwitz, Dearie